[No. 16016.  Department Two.  January 5, 1921.]

*In the Matter of the Estate of* KATHERINE HEMRICH.
ERNEST E. HEMRICH *et al., Appellants,* v. ALVIN
HEMRICH *et al., Respondents.*[1]

APPEAL (58)—DECISIONS REVIEWABLE—FINALITY—ORDER FIXING
FEES. An order finally fixing the fees to cover the entire services of
executors up to the time of their discharge, is a final one and is ap-
pealable.

EXECUTORS AND ADMINISTRATORS (163)—COMPENSATION—WAIVER
OF RIGHT—AGREEMENT—CONSTRUCTION. A writing which shows that
the parties intended no fees should be allowed executors over and
above a certain amount, is a waiver of compensation in excess of
the amount, without express positive terms to that effect; and hav-
ing agreed that "the estimated amount" of all fees and expenses
"shall not exceed" a certain sum, they are bound thereby.

Appeal from an order of the superior court for
King county, Frater, J., entered May 28, 1920, allow-
ing executor's fees, upon overruling objections to their
final report.  Reversed.

*Poe & Falknor,* for appellants.

*Chas. F. Munday,* for respondents.

TOLMAN, J.—Katherine Hemrich died in the year
1919, leaving a last will which, by its terms, disposed
of all her estate and named Louis and Alvin Hemrich
as executors.  After the will was admitted to probate,
appellants intervened and contested it on the ground
of lack of testamentary capacity on the part of the
testator, and undue influence.  Just before the contest
came on for trial, the parties interested agreed upon
a compromise settlement, and thereupon entered into,
and individually signed, the following written agree-
ment disposing of the entire estate:

[1]Reported in 194 Pac. 569.

"Whereas, a dispute has arisen herein between Emma Kirschner, Estella Hemrich MacAulay, Katherine Hemrich Scruby, John A. Hemrich, Ernest E. Hemrich and Alvin F. Hemrich (son of Andrew Hemrich, deceased) by his guardian *ad litem* Ernest E. Hemrich, on the one side, and Alvin Hemrich (son of John Hemrich, deceased) and Louis Hemrich, individually, and as executors of the estate of Katherine Hemrich, deceased, and William Hemrich, on the other side; and,

"Whereas, Katherine Hemrich (widow of John Hemrich, deceased) and Amelia Hemrich (widow of Andrew Hemrich, deceased) are interested in said controversy and in this agreement; and

"Whereas, All of said parties have settled and compromised all of their disputes and controversies, in pursuance of which they do hereby stipulate and agree as follows:

"(1) In lieu of the bequests made to them respectively under the last will of Katherine Hemrich, deceased, they shall receive the following property, to wit:.

"Amelia Hemrich, nothing;

"Alvin E. Hemrich, Katherine Hemrich Scruby, Ernest E. Hemrich and John Hemrich, children of said Andrew Hemrich, deceased, 93-3/4 shares each, of the capital stock of the Seattle Brewing & Malting Company, of the par value of $100 per share;

"Estella Hemrich MacAulay, daughter of said John Hemrich, deceased, 350 shares of stock in said corporation;

"Katherine Hemrich, widow of the testatrix's son, John Hemrich, $1,000;

· "Emma Kirschner, daughter of testatrix, 315 shares of stock in said corporation;

"William Hemrich, son of testatrix, 540 shares of stock in said corporation, and $1,000;

"Alvin Hemrich, son of testatrix, 475 shares of stock in said corporation, and $500;

"Louis Hemrich, son of testatrix, 408 shares of stock in said corporation.

"All of the residue of said estate, including all dividends heretofore declared or paid on all of said stock, shall go to said Louis, William and Alvin Hemrich, sons of deceased, in equal shares; all dividends hereafter declared or paid on said shares, including the dividend which will be payable on or about November 18th, 1919, shall go to the parties hereto, in proportion to their stock ownership, as above stated, after the payment of the sums hereinabove specified and the claims against the estate, including expenses of administration, the estimated amount of all of which will not exceed $12,500: the cash on hand in the hands of the executors shall be first applied to the payment of the said estimated sum of $12,500.

"Out of the residue of said estate, including dividends, the executors shall pay the Federal estate tax, the fees of the attorneys for the petitioners, which have already been agreed upon, and all the expenses of the estate, and charges against the estate (including the clerk's and sheriff's fees paid by the petitioners in the will contest), and they shall place the sum of $1,000, or so much thereof as shall be requisite, with the Lakeview Cemetery Perpetual Fund Association, in lieu of clause two of said will.

"Each party hereto shall pay the state inheritance tax on the property received by him or her hereunder.

"And the said Emma Kirschner, Estella Hemrich MacAulay, Katherine Hemrich Scruby, John A. Hemrich, Ernest E. Hemrich, Alvin F. Hemrich (son of Andrew Hemrich, deceased), Katherine Hemrich (widow of John Hemrich, deceased), and Amelia Hemrich (widow of Andrew Hemrich, deceased), do hereby release and discharge the said estate and the executors, as well as William Hemrich, Louis Hemrich, and Alvin Hemrich, and each of them, individually, from any and all claims and demands arising out of said dispute or otherwise, including any claims arising out of the disbursement of moneys and dividends of said deceased, by virtue of the power of attorney given by deceased to Louis Hemrich, or otherwise; and the said Louis, Alvin and William Hemrich do hereby release

and discharge each and all the other parties hereto from all claims and demands.

"Further stipulated that the petition for the contest of said will shall be forthwith dismissed of record by the petitioners without cost."

Thereafter the respondents as executors petitioned the court and, without notice, obtained an order fixing their fees as executors of the estate at $3,000, and subsequently filed a final account in which they took credit for that sum. Appellants filed written objections to the final account, in which they raised only the question of the fee allowed to the executors, claiming that no executors' fees should be allowed which would raise the disbursements by the executors above the sum of $12,500 specified in the written stipulation hereinabove quoted. From an order overruling the objections and allowing to the executors $3,000 as their compensation this appeal is prosecuted.

We are met at the outset by a motion to dismiss the appeal upon the ground that the order appealed from is not a final order or judgment and therefore no appeal will lie.

The record discloses that the only matters in dispute and before the court to be determined, at the time fixed for the hearing on the final account, were the questions of the fees of the executors and the amount of the inheritance tax to be paid to the state; and as to the latter question it was stated by counsel for respondents at the opening of the hearing that the dispute as to the question of the inheritance tax would be settled by a case then pending and since decided by this court, and that he had agreed with the tax commissioner that no final order should be made fixing the amount of such tax until the amount thereof was so decided; and near the close of the hearing the following colloquy took place between counsel for respondent and the court:

"Mr. Munday: Now, in regard to the final decree. I suppose I could take a final decree now with an order that the inheritance tax be paid when ascertained, and then take a supplemental decree.

"The Court: I do not see any reason why that might not as well be deferred and take it all up at once—that is merely a suggestion.

"Mr. Munday: That is what I had in mind would be the proper way to do it.

"The Court: You can make a distribution of everything at once.

"Mr. Munday: Everything has been distributed except a small balance.

"The Court: That being the case, I do not see why you should take two orders and by deferring the matter until then, the question of inheritance tax can be finally settled.

"Mr. Munday: Then we had better have a continuance."

It clearly appears, therefore, that the order appealed from was intended to be a final order upon the subject now presented, and that the continuance provided for was not a general continuance, but was limited to the one purpose shown by the record. The fees fixed were intended to cover the entire services of the executors up to the time of their discharge, and the subject was as fully disposed of and determined as it could ever be. We are satisfied that the order was a final one and therefore appealable. *Horton v. Barto,* 17 Wash. 675, 50 Pac. 587; *Wilbur v. Wilbur,* 17 Wash. 683, 50 Pac. 589.

The attitude of the trial court seems to have been that executors are by statute entitled to fees, and unless there is something in the agreement amounting to a clear waiver of the right to compensation, such fees should be allowed, and so far we agree; but the trial court seems to have acted upon the assumption that the agreement must, in clear and explicit language,

refer to such fees, and a waiver must be expressed in positive terms. To this we cannot agree. If the writing, fairly considered, in the light of conditions as they existed when it was entered into, shows that it was intended by the parties thereto that no fees should be allowed or paid in excess of an amount certain, then it must be held to be a waiver of any such excess.

There was before the court not only the agreement of the parties, but the final report and the whole record in the case, from which it appears that, at the time the agreement was entered into, the time for filing claims against the estate had fully expired and that the parties to the agreement could and did then fairly and closely estimate the sums to be paid out. The record shows that, including the sums specified in the agreement to be paid in settlement, and excluding any executors' fees, the sum necessary to discharge all such obligations was known to be $12,395.17, at the time of the hearing below. The amount was known substantially, but not with absolute accuracy at the time the agreement was entered into, and when the parties estimated the amount at "not to exceed $12,500" some weight must be given to the language used.

"Claims against an estate are those in existence at the death of the deceased. Other claims against an estate are those incurred by the administrator or executor in settling the estate and are properly denominated 'expenses of administration.'" 2 Church New Probate Law and Practice, p. 1261; *Estate of Nicholson,* 1 Nev. 433.

And therefore the agreement means that the parties estimated that the known claims, together with those incurred and to be incurred by the executors, should not exceed $12,500. The word "estimate" as used here, means the deliberate opinion and judgment of the parties concerned upon all of the then known facts, but

not, of course, upon facts not known, and therefore not within their contemplation at the time. It was known to all of them that the executors had, and would perform services for which in law they would be entitled to compensation, and when the executors, as such, deliberately joined in the agreement disposing of every asset of the estate in specified amounts to each claimant, and expressed their opinion and judgment that the deductions would not, and therefore should not exceed a sum certain, they will be held bound thereby not to thereafter assert a claim in their own favor, known to them from the beginning, which will cause an expenditure of a sum in excess of that which it was stipulated should not be exceeded. The judgment appealed from is reversed, and the case remanded for further proceedings not inconsistent with these views.

HOLCOMB, C. J., MOUNT, MITCHELL, and MAIN, JJ., concur.