## IN RE ESTATE OF MURPHY.

(No. 4,074.)

(Submitted January 15, 1920. Decided February 16, 1920.)

[188 Pac. 146.]

*Probate Proceedings — Executors and Administrators — Settlement of Accounts—Record on Appeal—"Party Aggrieved"—Decree—Estoppel—Res Adjudicata—Distribution of Estate—When Complete—Supreme Court—Jurisdiction—Rehearings.*

Probate Proceedings—Executors and Administrators—Settlement of Accounts—Record on Appeal.

1. The record on appeal from an order settling the final account of an executor which contained the papers used at the hearing properly authenticated by the clerk of the court was sufficient, it not being necessary to bring up the whole record of the lower court.

57 Mont.—18

Same—Record on Appeal.

2. Errors in former accounts of an executor are not open for review on appeal from an order settling a subsequent one; hence matters pertaining to them are not properly a part of the record.

Same—Appeal—"Party Aggrieved."

3. A son and heir at law who was pecuniarily and materially affected by a decree settling the final account of the executor and distributing the estate was a "party aggrieved" by, or a person interested in, the decree, within the meaning of the statute allowing an appeal to such person in probate matters.

Same—Appeal—*Res Adjudicata.*

4. An heir who permitted the will of his father to be probated without contest, accounts of the executor settled and allowed, and partial distribution of the assets made without timely objection or appeal, was foreclosed from attacking such proceedings on appeal from an order settling the final account of the executor and making final distribution.

Same—Decree—Statute of Limitations.

5. On the expiration of one year within which a will after probate may be contested, as provided by section 7407, Revised Codes, which is in effect a statute of limitations, the running of which commences with the date of the admission of the will to probate, the probate becomes final and is not open to either direct or collateral attack.

Supreme Court—Jurisdiction—Appeal.

6. The supreme court has appellate jurisdiction only, except as to those matters over which original jurisdiction is expressly conferred, and will therefore not consider any question on appeal in a civil case not raised in the trial court.

Probate Proceedings—Attack on Will—Estoppel.

7. Where the probate of a will leaving property in trust was not contested, and after the estate had been administered upon under the terms of the will and all of the property was out of the hands of the executor, appellant was estopped, on appeal from an order settling the final account of the executor, to attack the provisions of the will creating the trust.

Same—Confirming Action of Executor—Harmless Error.

8. *Held,* that the action of the district court confirming that of an executor in turning property of the estate in his charge over to testamentary trustees without first obtaining an order of distribution, was harmless, it appearing that the executor reported his action to the court, which thereafter approved it.

Same—Distribution of Estate—Worthless Note.

9. Where all debts, bequests and payments provided for under a will had been paid and the only property in the hands of the executor was a worthless note, which was disposed of by the decree of final distribution, complaint that the estate was not ready to be closed, that the property had not been distributed and that the executor should not have been discharged, *held* without merit.

Appeal—Rehearing—What will not be Considered.

10. On petition for rehearing, the supreme court will not consider grounds not presented on the original hearing.   (On Motion for Rehearing.)

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

IN THE MATTER of the estate of John T. Murphy, deceased. From a decree finally settling the accounts of the executor, John T. Murphy, Jr., appeals.    Affirmed.

*Messrs. Walsh, Nolan & Scallon* and *Mr. Frederick H. Drake,* for Appellant, submitted a brief and one in reply to that of Respondents; *Mr. Wm. Scallon* argued the cause orally.

*Mr. Wm. Wallace, Jr., Mr. John G. Brown* and *Mr. T. B. Weir,* for Respondents, submitted a brief; *Mr. Weir* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

John T. Murphy died May 22, 1914, leaving a will by the terms of which one-fourth of his estate, after the payment of certain small bequests, was left to his wife, Clara C. Murphy, and the remaining three-fourths to a board of trustees, for the use and benefit of his children and grandchildren. The two daughters of deceased were each to receive the income from the one-third thereof until they reached the age of fifty years, when the principal would be turned over to them, or, if either married before reaching that age, such daughter would receive the one-half of her share on marriage, and the other half on attaining the age of fifty years. The income from the other third of the residue was to be divided between the son, John T. Murphy, Jr., and his two minor children; the children's half of the principal to go to them equally on reaching the age of twenty-one, while the son (this appellant) would receive but the income during his lifetime, the principal to go to his children on his death. The will provided that the trust created should continue for a period of ten years, "and for such a reasonable period thereafter as may be necessary to enable my trustees to complete the trust confided to them, as herein provided, except to the extent, if at all, that the same shall be sooner terminated as to any one or more of my children," and provided for the successors to the trustees named.

Petition for probate of the will was filed May 27, 1914, and notice duly given setting the matter for hearing for June 6, 1914; no objections being filed, the will was admitted to probate on the last-mentioned date, and the executor therein named was duly appointed and qualified. More than one year has elapsed without the filing of a contest of the will by appellant or any other person interested in the estate.

On May 21, 1915, the executor filed his first annual account and report to the court, in which he recited, among other things: "By partial distribution: Clara C. Murphy, 181,000; A. L. Smith, Massena Bullard, and Rolla P. Heren, trustees, $699,375," which last amount was receipted for to the executor by the trustees named. June 1, 1915, was set by the court for hearing on the account, and notice thereof duly given by the clerk of the court. No exceptions were filed to the account, and no contest thereof instituted, and on the day set for hearing the account was approved, settled and allowed by the court. On September 3, 1915, the executor filed petition for order of partial distribution, relating, however, only to certain real estate sold by the trustees. The day of hearing was set and notice given; no objections were filed, and the order was duly made and entered on the day set for the hearing. On February 16, 1917, the executor filed his final report and account and petition, setting forth that all claims against the estate had been paid, as well as all the expenses of administration, showing distribution of the net income from moneys on hand to the children of deceased, including appellant, in the manner provided by the will, and distribution of the remainder of the estate to the widow and the trustees, as follows: "Clara C. Murphy, * * * $152,035.92; * * * trustees, as per vouchers, * * * $456,107.74." The report and account further show the only property remaining in the hands of the executor to be a note for $1,000, then in the bankruptcy court, which the petition alleged was of no value, and that the estate was ready to be closed. The executor further petitioned that final distribution of the estate be made and that he be finally discharged. February 27, 1917, was set as the day

for hearing on the account and petition, and notice thereof duly given by the clerk of the court in the manner prescribed by law. No exceptions in writing to the account were filed, and no contest thereof instituted, and on said day the account and petition were heard, and decree made and entered, settling, allowing and approving the account and report, and all acts of the executor, making final distribution of the estate, and reciting that "the said A. L. Smith is fully and finally discharged from his trust as executor."

On April 26, 1917, just within the sixty-day limit, under section 7713, Revised Codes, appellant filed his notice of appeal from the final decree, in which he designates four appeals, and on which he filed four undertakings on appeal: (1) From the settlement of the account; (2) from the decree of distribution; (3) from the discharge of the executor; and (4) from the whole of the decree.

The respondent contends that the appeal should not be entertained for the reason:

1. That there is no authentic record before the court for consideration; that there is no "bill of exceptions." As there were [1] no objections or exceptions taken in the lower court, there could be no settled bill of exceptions.

The transcript contains practically all of the papers in the probate proceedings, certainly all of the record in this matter which was, or could have been, used on the hearing; it is duly certified by the clerk of the court, who was the legal custodian of the records. This is a sufficient record and is properly authenticated. In In re Dougherty's Estate, 34 Mont. 336, 86 Pac. 38, this court said: "While there is no such thing, technically, as a judgment-roll in probate proceedings, the successive determinations in the course of them, whenever the statute directly or by implication declares them final, must be regarded as final judgments, and the portions of the record upon which they are based must on appeal be regarded as the record for the particular determination. It would be idle to require that they

should be authenticated by bills of exceptions in order to make them a part of the record, since they are already such.''

It is not necessary to bring up the whole record of the lower court. (*Estate of Healy,* 122 Cal. 162, 54 Pac. 736; *Estate of Osburn,* 36 Or. 8, 58 Pac. 521; *Estate of Reese,* 9 Utah, 171, 33 Pac. 698; *Estate of Levison,* 108 Cal. 450, 41 Pac. 483, 42 Pac. 479; *Estate of Plunkett,* 33 Or. 414, 54 Pac. 152.)

The record, authenticated by the clerk, is a sufficient record in all such cases; but here we have considerable more of the record than should have been certified to this court. The record upon appeal should consist only of the proceedings before the court at the time when the order complained of was made. (*Estate of Delaney,* 110 Cal. 563, 42 Pac. 981.) Errors in [2] former accounts cannot be considered on an appeal from an order settling a subsequent account, as the order on the former account was conclusive. (Sec. 7649, Rev. Codes; *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6; *Estate of Grant,* 131 Cal. 426, 63 Pac. 731; *In re Bell's Estate,* 142 Cal. 97, 75 Pac. 679; *Forrester* v. *Forrester,* 40 Ala. 557; *Kellett* v. *Rathburn,* 4 Paige (N. Y.), 107.) The appellant was in no position to present any question arising out of the action of the executor, as reported to the court in his first annual account, and records of those transactions should not have been included in the certified record.

2. Respondent asserts, also, that it does not appear from the record that appellant was a ''party aggrieved'' by, or person [3] interested in, the decree. A person interested, within the meaning of the statute allowing an appeal from a decree of the probate court, is one who has some legal right, or is under some legal liability, that may be enlarged or diminished by the decree. (*In re Clark's Estate,* 79 Vt. 62, 118 Am. St. Rep. 938, 64 Atl. 231.) This refers to a pecuniary interest which might be established, in whole or in part, by the decree. (*Briard* v. *Goodale,* 86 Me. 100, 41 Am. St. Rep. 526, 29 Atl. 946.)

It appears from the record that appellant was a son and heir at law of deceased, and that his rights were pecuniarily and

materially affected by the decree, and, if he took the proper course to secure his rights, is certainly a "party aggrieved" and entitled to prosecute his appeal.

3. The respondent contends that the appeal cannot be con-[4] sidered by us for any purpose, for the reason that the appellant did not, in the court below, comply with the provisions of section 7647 of the Revised Codes, which reads as follows: "On the day appointed, or any subsequent day to which the hearing may be postponed by the court or judge, any person interested in the estate may appear and file his exceptions in writing to the account, and contest the same." The section quoted is the only one referred to in respondent's brief; however, sections 7645, 7648 and 7649 have to do with the same subject, and throw some light upon the duties of a party desiring to contest the account of an executor or administrator. Section 7648 provides that "All matters  *  *  *  may be contested by the heirs *for cause.*  *  *  *  The hearing and *allegations* of the *respective parties* may be postponed from time to time," *etc.*

Section 7649 provides that "the settlement of the account and the allowance thereof by the court or judge, *or upon appeal,* is conclusive against all persons in any way interested in the estate," *etc.*, except as to those laboring under some disability.

What, then, are the rights of an heir under the facts shown in the record; that is to say, where the heir sat calmly by and permitted the will to be probated, the several accounts and petitions of the executor to be settled and allowed, the estate to be fully settled, the assets distributed, and the executor finally discharged from his trust, before making any objection to the proceedings?

The right of appeal rests solely upon statute (*Estate of Tuohy,* 23 Mont. 305, 58 Pac. 722; *State ex rel. Jackson* v. *Kennie,* 24 Mont. 45, 60 Pac. 589; *In re Searles,* 46 Mont. 322, 127 Pac. 902), and is therefore dependent upon compliance with the provisions of the statutes (Woerner on Wills and Administration, pp. 1192, 1198; *Creek* v. *Bozeman Water Co.,* 22 Mont. 327, 56 Pac. 363).

Section 7098, Revised Codes, provides generally for all appeals in both civil and probate matters, and is contained in Part II of the Codes; while Part III covers probate proceedings. Section 7711, in Part III, provides that "Except as otherwise provided in this Title, the provisions of Part II of this Code are applicable to and constitute the rules of practice in the proceedings mentioned in this Title."

Section 7712, likewise provides that "the provisions of Part II * * * relative to new trials and appeals—except in so far as they are inconsistent with the provisions of this Title— apply to proceedings mentioned in this Title."

Section 7714 declares that "all issues * * * joined in probate proceedings must be tried in conformity with the requirements of Article II, Chapter II of this Title"—which Article deals with the contest of wills, and provides for the filing of written objections and the joinder of issue and trial in contest proceedings.

We find, then, that unless otherwise provided for in the Title on probate proceedings, the rules of practice in civil actions apply to and govern the practice in probate proceedings, and that all issues joined in probate proceedings must be tried in conformity with the requirements laid down for the trial of will contest cases. We find, further, that in probating an estate the executor or administrator must make accounts and reports of his actions to the court, and that, when the same are filed, the court must set a day certain for a hearing thereon, at which time any party interested may file written exceptions to the account and contest the same. These are positive provisions of the Chapter on probating estates, and are also in conformity with the practice prescribed for the contest of a will. That all parties interested may be advised and given the opportunity to appear and file exceptions, the clerk of the court is required by section 7646, Revised Codes, to post notice of the date set, reciting all the facts necessary to advise the interested parties of what has been done and what it is proposed shall be done at that time in the estate matter.

We may logically assume that the filing of the account by the executor takes the place of the filing of a complaint under the civil practice, and that the notice—which is a notice to all parties interested—performs the function of a summons in civil cases, and that appellant stands in default, both as to the admission of the will to probate and as to the subsequent proceedings thereunder, up to and including the filing of the decree of settlement of the first annual account. The time for appealing from such action having long since expired, appellant is foreclosed from in any manner attacking those proceedings. They are *res adjudicata,* so far as this proceeding is concerned. So, also, as to the contest of the will itself.

Section 7407, Revised Codes, provides for the contest of a [5] will after probate, at any time within one year. This is, in effect, a statute of limitations, the running of which commences with the date of the admission of the will to probate. (*Columbia University* v. *Taylor,* 25 App. D. C. 124; *Spaulding* v. *White,* 173 Ill. 127, 50 N. E. 224.) After the expiration of the time fixed by the statute, the probate becomes final and is not open to further attack, either directly or collaterally. (*Bent* v. *Thompson,* 138 U. S. 114, 34 L. Ed. 902, 11 Sup. Ct. Rep. 238 [see, also, Rose's U. S. Notes] ; *In re Dunsmuir's Estate,* 149 Cal. 67, 84 Pac. 657; *Focha* v. *Focha's Estate,* 8 Cal. App. 576, 97 Pac. 321; *Estate of Ricks,* 160 Cal. 467, 117 Pac. 539.)

But it is contended, in argument, that this proceeding is not [6, 7] an attack on the validity of the will, but merely upon that portion thereof creating the trust. Whichever view we take of the proceeding, the result sought to be accomplished is the same; that is, to take the property, left in trust, out of the operation of the trust and dispose thereof by a re-administration of the estate after the estate has been administered upon under the terms of the will, and all of the property is out of the hands of the executor, because of the alleged invalidity of certain important provisions of the will, and under which proceedings, if had, the bulk of the testator's property would be required to be reassembled and redistributed in manner other than that he in-

tended it should be.   This question is presented for the first time on this appeal; no appropriate proceeding was commenced in a court of competent jurisdiction to determine the matter, but it is sought to be presented on this appeal from the final decree of distribution and discharge made in the probate court, or the district court sitting in probate.   Had the application been made to this court within the time allowed for the contesting of the will, the matter could not have been determined in this court, for it has appellate jurisdiction only, except as to those matters over which original jurisdiction is expressly conferred (sec. 2, Art. VIII, Const.; *Titus* v. *Latimer*, 5 Tex. 433), and can only consider such matters as are properly brought before it on appeal.   The right to appeal rests solely upon the statute. (*Estate of Tuohy, supra; In re Searles, supra; State ex rel. Jackson* v. *Kennie, supra.*)

The rules of practice in civil actions are expressly made applicable to probate proceedings (sec. 7711, Rev. Codes), as are the provisions relative to new trials and appeals (sec. 7712).   In civil actions, the general rule is that the appellate court will only consider such questions as were raised in the lower court; the all-sufficient reason for the existence of the rule being that, had the question been raised in the lower court, the objection might easily have been remedied there.   (2 R. C. L., sec. 52, pp. 69–71.)

The question of the validity or invalidity of the provisions of the will complained of should have been raised by appropriate proceedings in the district court, under the statutes providing therefor, and where the question could have been heard and determined, and from which determination an appeal would lie to this court.

This proceeding depends for its foundation on the allegation that the will is, as to the provisions mentioned, illegal and void. In the case of *Dean* v. *Swayne*, 67 Kan. 241, 72 Pac. 780, the facts were somewhat similar, and the relief sought almost identical with the case before us.   Decedent having left his property to his sister, who was a member of an Order of Sisters in England, and provided that in case of her death before that of tes-

tator, the property should descend to the Order of Sisters. The sister died before testator; the will was offered and admitted to probate, without contest. Nearly three years thereafter, but while the estate was still in process of administration, the nephew of testator filed a motion in the probate court for an order compelling the executor to distribute the property to him as the heir at law of testator. The court, in ordering the dismissal of the appeal, said: "It is very clear to us that the object sought by Swayne in his application was to set aside the will because of the uncertain description of the beneficiaries and to have the property of the testator turned over to him as heir at law. The argument of counsel for defendant in error in his brief is: 'But Mr. Swayne does not now, and never did, attack the validity of the will; his position is, and always has been, that if the sister of the testator is dead then the property descends to him as heir at law for the reason that the bequest to the Order of Sisters in England is invalid and inoperative.' * * * The application stated that the will was invalid, illegal, inoperative, and void, and the defendant in error sought to have the probate court so declare. If, as said by counsel, the will is valid, then the defendant in error takes nothing. Until its invalidity is declared by a court of competent jurisdiction, he cannot inherit. We are of the opinion that this *was* a proceeding to contest the will, and under the section above quoted the probate court had no jurisdiction to hear or decide this motion. The statute * * * gives the district court exclusive jurisdiction of actions brought to contest wills, and limits the time within which such actions may be brought to two years from the probating of the will."

Having failed to contest the will within the time allowed by law, appellant was foreclosed to thereafter contest its validity, and cannot now be permitted to do by indirection what he could not do directly. It is not necessary that we here determine whether the question could have been raised on objections filed in writing to the settlement of the final account of the executor; objections were not filed, and again the appellant was in default, and now stands in the same position as a defaulting defendant

in a civil action, appealing from a default judgment or decree, and foreclosed from attacking any of the subject matter contained in appealable orders made prior to judgment or decree, and on which appeal was not taken.    (2 Cyc. 617.)

This precludes appellant from attacking the validity of the [8] will or the correctness of the decree settling the first annual account of the executor, and the only matters on which we are permitted to pass herein are errors or irregularities appearing on the face of those papers which take the place of a judgment-roll in this proceeding, and of these only such as directly affect the rights of appellant.    Applying this rule, we find the objection to the action of the court in confirming the action of the executor in turning the property described over to the trustees, without first obtaining an order of distribution thereof to the trustees.    The record, however, discloses that the executor reported his action to the court, and the court did thereafter confirm and approve his action.    If error, it was harmless, as all that could thereafter be required would be that the executor procure an order of court before turning the property over and then do exactly as he had done.

Mr. Schouler in his work on Wills, Executors and Administrators, fifth edition, section 1472, says: ''In order to carry out special provisions under a will, which look to the preservation of a principal fund for special schemes, such as charity, or so as to pay income only to certain persons designated, until the happening of some event, or so that the fund may accumulate, and generally where the intent is to postpone the full beneficial vesting of the legacy in the ultimate legatee, trustees are usually designated under the will to hold and manage the fund, apart from the executors.    These trustees are subject to the approval, direction and sometimes selection of the courts of equity; and properly speaking   *   *   *   the administration of these testamentary trusts is a branch, and quite an important one, of equity jurisdiction.   *   *   *   In many parts of the United States, however, the probate courts in the several counties have general equity powers, conferred by statute, and exercised concurrently

with the supreme tribunal of the state. The appointment, qualification and immediate supervision of testamentary trustees devolves, however, under American Codes, upon the local probate courts, in the first instance, as in case of executors. * * * The duties of testamentary trustees are distinct from those of executor. * * * Like an executor, the testamentary trustee is required to return an inventory and render his account regularly to the probate court. * * * Subject to the usual variation of state enactments, the general rule in the United States is to place testamentary trustees under a probate supervision similar, *mutatis mutandis*, to that of executors, and from a like sedulous regard for the welfare of the beneficiaries. From the probate decree in such trusts, the usual appeal lies to the supreme tribunal of the state."

In section 609, Schouler, after stating that trustees should qualify and obtain the sanction of the court, states: "The executor transfers the trust fund to the trustees thus officially vested with authority to receive it, crediting himself in his accounts accordingly and closing the accounts when his functions are fully performed; and the trustee, returning his own inventory and regular accounts from time to time, carries on the bookkeeping of the estate, or rather the fund under his own direction, as matter of public record, and under the supervision of the court of probate and of the appellate tribunal which exercises probate and equity jurisdiction, until the trust is completely discharged."

Complaint is made that the estate was not ready to be closed, [9] that the property of the estate had not been distributed, and that the executor should not have been, therefore, discharged. The record shows that all debts, bequests and payments provided for under the will had been paid, and that the only property in the hands of the executor was a worthless note for $1,000. The decree of final distribution disposed of the note.

Other irregularities appear in the proceedings, but do not affect the rights of the appellant, and are therefore not considered. We find no error in the action of the court below, sitting

in probate, of which appellant can complain. The final decree of distribution and discharge is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY and HURLY concur.

MR. JUSTICE COOPER, being absent, takes no part in this decision.

## ON MOTION FOR REHEARING.

### (Decided March 14, 1920.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appellant has filed a petition for rehearing, urging that the opinion herein is in direct conflict with the rules heretofore established by the court, citing *In re Fleming's Estate,* 38 Mont. 57, 98 Pac. 648, and *In re Hobbins' Estate,* 41 Mont. 39, 108 Pac. 7. We do not so view the matter. Nothing in the opinion is intended to, nor do we believe that it does in any manner, conflict with the rules laid down in the cases cited.

In the *Fleming Estate Case,* this court held that the question of heirship, title or interest in an estate could be raised in either of two proceedings: First, as provided for in sections 7670, 7671 and 7672, Revised Codes; or, second, in a contest upon final distribution of the estate—and that those provisions are exclusive of every other procedure for determining such questions.

The *Hobbins' Estate Case* held that the validity or invalidity of specific bequests or devises may not be determined in a will contest under the statute, the court stating that "the issue indicated may be tried and determined in *appropriate proceedings* instituted after the will is formally admitted to probate."

In the instant case we held, in effect, that where an estate has been fully and finally settled, and the property thereof distributed in its entirety, under the terms of a will, one who has acqui-

esced therein by failing to contest the will or any act of the executor, or to proceed in either of the methods outlined in the statute as construed in the *Fleming Case,* cannot for the first time raise the question of heirship; title or interest, contrary to the will, in this court on an appeal from the decree of final distribution and discharge, and, by pointing out errors of which he was theretofore cognizant, if they exist at all, require a reassembling of the assets of the estate and a redistribution thereof, contrary to the provisions of the will, "whichever view we take of the proceedings"; that is, whether an attack on the validity of the will, or merely upon that portion thereof creating a trust. And we announced the opposite and converse of the rule laid down in the *Hobbins Case,* to-wit: "The question of the validity or invalidity of the provisions of the will complained of should have been raised by *appropriate proceedings* in the district court, *under statutes providing therefor* and where the question could have been heard and determined."

Under similar conditions, the supreme court of California, in the case of *McGavin* v. *Orphans' Asylum Soc.,* 34 Cal. App. 168, 167 Pac. 182 (1917), reached the same conclusion, and closed its opinion with the statement: "It must be remembered that a decree of distribution is a judgment *in rem,* and, although erroneous, is as conclusive against one who fails to appear, having the opportunity so to do, as it is against a party whose fault produced the error"—citing cases.

Appellant attempts in his petition for rehearing, for the first time, to question the sufficiency of the notice of the hearing on the final account. It is the universal rule—and this court has repeatedly held—that the court will not consider grounds not [10] presented upon the original hearing. (*Kaufman* v. *Cooper,* 38 Mont. 16, 98 Pac. 504, 1135; *Forrester* v. *Butte & M. etc. Min. Co.,* 21 Mont. 565, 55 Pac. 229, 353; *Merchants' Bank* v. *Greenhood,* 16 Mont. 460, 41 Pac. 250, 851.)

The motion for a rehearing is denied.

Mr. Chief Justice Brantly and Associate Justices Holloway and Hurly concur.